## GARDINER BANK *vs.* SAMUEL HODGDON *et al.*

In a Court of Equity, if the vendor of chattels be permitted to retain the possession thereof after an absolute sale, this is *prima facie* evidence of fraud upon creditors; and unless a satisfactory explanation be given, it will be held conclusive.

And where the explanation offered by the vendee is, that the vendor was indebted to him in the sum of $300, and to secure that amount, he purchased real estate of the value of $900, paying the balance in cash, and also made another purchase of chattels to the amount of $600, paying therefor in cash and in his own notes to the vendor ; it will not be deemed satisfactory.

This was a bill in equity, alleging that the plaintiffs are judgment creditors of *Elwell,* one of the defendants, and that *Elwell* was possessed of sufficient property for the payment of his debts, but had fraudulently and collusively conveyed the same to *Hodgdon,* the other defendant, to defraud the plaintiffs, and his other creditors, and that *Hodgdon* had received the conveyances of the property with the same view, and had left it in the possession, and under the control of *Elwell,* as before the conveyances were made. After the interrogatories, the bill concluded with a prayer, that *Hodgdon* should be held to pay the debt from *Elwell* to the plaintiffs, or that he should deliver up the property to be taken to satisfy the same.

The defendants filed answers, which were excepted to by the counsel for the plaintiffs, as incomplete and insufficient, and additional answers were made. *Hodgdon,* in his answers, says, that *Elwell* was indebted to him in about the sum of three hundred dollars, that he wished to secure his debt, and purchased *Elwell's* real

estate for $900, and paid in part by giving up the notes he held against him, and the balance in cash; that he purchased a number of horses and other property of *Elwell*, and paid him therefor $600, of which $400 was paid in cash, and the residue by his note; that the purchase was made by him in good faith, and without any intention to defraud the creditors of *Elwell*, and that his only inducement was to secure his debt against *Elwell*. In answer to the interrogatories, he gave a particular description of the property, and what had been done with it. He admitted, that *Elwell* had retained the possession of all the property purchased, both real and personal, under an agreement with him to pay rent therefor. The answer stated, in answer to an interrogatory, that the sale of the land and chattels, was on the same day, but did not state them to be parts of the same transaction, but treated them as distinct sales. Testimony was taken by the plaintiffs, to prove fraud in the transaction, and by the defendants to repel the imputation.

*F. Allen*, for the plaintiffs, argued, that if the trust be made out, fraud is an inference of law. The answer denies all fraud, and if untrue in that denial, the answer does not aid the defendant. *Hadden* v. *Spader*, 20 *Johns. R.* 554; *Spader* v. *Davis*, 5 *Johns. Ch. R.* 280. He contended, that if this case is to be tried by the same rules as a trial at law, and the Court will draw only the same inferences, as a jury would, under the instruction of the Court, that fraud was proved. Where the sale is absolute, and the possession remains with the seller, that fact is universally held to be either conclusive, or *prima facie*, evidence of fraud. *Twyne's case*, 3 *Coke*, 8; *Coburn* v. *Pickering*, 3 *N. H. Rep.* 415; *Sturtevant* v. *Ballard*, 9 *Johns. R.* 337; *U. States* v. *Hooe*, 3 *Cranch*, 73; *Brooks* v. *Powers*, 16 *Mass. R.* 244; *Edwards* v. *Harben*, 2 *T. R.* 594; *Hamilton* v. *Russell*, 1 *Cranch*, 309.

In a Court of Equity fraud may be presumed from the circumstances and condition of the parties contracting; and this goes farther than the rule of law, which is, that it must not be presumed, but proved. *Fonbl. Eq.* 133, 4th *Am. ed.*; 1 *Dess. Eq. R.* 289; *Chesterfield* v. *Jansen*, 2 *Ves.* 155; 1 *Story's Eq.* § 188. He went into an examination of the answers, and inferred, that they shew fraud on their face, and urged, that with the proof, the conclusion was irresistible, that the sale was fraudulent.

*Bachelder*, for the defendants, argued, that fraud is not to be presumed, but must be proved. To make a contract fraudulent and void, there must be a secret trust for the benefit of the seller. Each party must be conusant of the fraud, to vitiate the contract, and whatever the motives of *Elwell* may have been, the conduct of *Hodgdon* is free from all suspicion. He wished to secure his own debt, and for this purpose alone, and without any intention to injure others, he purchased the property. He so says in his answer, and there is nothing in the evidence to disprove it. He commented on the testimony, and contended, that there was nothing unusual in the transaction, and that the purchase was *bona fide*, and for a full consideration, actually paid. His leaving the property in *Elwell's* possession is fully explained, and gives no cause for suspicion, when the consideration is fully paid, as in this case. He cited *Northampton Bank* v. *Whiting*, 12 *Mass. R.* 110 ; *Harrison* v. *Phillips Academy, ibid.* 456 ; *Bridge* v. *Eggleston*, 14 *Mass. R.* 245 ; 2 *Cowper*, 432 ; 2 *Mason*, 276 ; *Brooks* v. *Powers*, 16 *Mass. R.* 244 ; *Badlam* v. *Tucker*, 1 *Pick.* 389.

The opinion of the Court, after a continuance *nisi*, was prepared by

Weston C. J. — The defendant, *Hodgdon*, being the creditor of *Elwell*, to the amount of about three hundred dollars, purchased his real estate, for an adequate price, giving up therefor his own demands, and paying the balance of the consideration in cash. He denies all fraud and collusion in his answer ; and avers that his object was, to secure his debt. We perceive nothing in this part of the case, sufficiently marked, to countervail the answer. The deed conveying the estate was duly recorded, which was notice to all persons interested to know the fact. And the subsequent occupancy by *Elwell*, at a rent, was consistent with the purchase, as *Hodgdon* did not want the property for his personal use, and the rent was a fair profit upon the investment.

But the purchase of the personal chattels stands upon a different ground. *Hodgdon's* own debt was secured when he took a deed of the real estate. That transaction was finished. It is not pretended, in the answer of either of the defendants, that the purchase of the personal estate was to be a condition, upon which alone *El-*

*well* was willing to part with the real. He had sold that for a fair price, and had received full payment in hand.

*Hodgdon* took an absolute bill of sale of the personal chattels, but left them all in the possession of *Elwell*. This is deemed, by our law, *prima facie* evidence of fraud. It may be explained; and if the explanation is satisfactory, the legal imputation of fraud is removed. If the object of *Hodgdon* had been to make a loan of money, a mortgage of the personal chattels for security, would have been a lawful transaction. And if this had been his purpose, we do not say that the inference of fraud might not have been thereby repelled, notwithstanding the form in which the business was done. But he gives no such explanation in his answer. The security of his previous debt is the only avowed motive, for his large advances for the purchase of property, which he did not want, and which was still suffered to remain, and that for a long period, with every mark of trust and confidence, in the hands of the former owner, then in failing circumstances. Besides, his debt had been cancelled by the purchase of the real estate, leaving very strong ground to justify the inference, that the avowed motive is merely colorable.

The fraudulent character, which attaches in the eye of the law, in favor of creditors, to an absolute sale of personal chattels, where the vendor is suffered to remain in possession, is rather aggravated than removed, by the explanation attempted. A portion of the moneys received may have been appropriated by *Elwell* to the payment of his debts. Taking, however, the bill, answer, and proof, together, we are of opinion, that the fraud charged has been sustained. And we are further of opinion, that the defendant, *Hodgdon,* for his unlawful interposition, to defeat or delay the creditors of *Elwell*, ought to be held liable for an amount, equal to the plaintiffs' judgment against *Elwell*. And it is accordingly ordered and decreed, that he pay the same with costs.